IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-00280-REB-CBS

WELDON MOTT II,
        Plaintiff,
v.

OFFICER JOHN DOES I,
OFFICER JOHN DOES II, and
CITY OF COLORADO SPRINGS,
        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on the Motion to Dismiss filed on May 2,

2007 by Defendant City of Colorado Springs ("City").  (*See* doc. # 25).  Pursuant to the

Order of Reference dated March 15, 2007 (doc. # 12) and the memorandum dated May

2, 2007 (doc. # 26), the Motion was referred to the Magistrate Judge.  The court has

reviewed the Motion, Mr. Mott's Response (filed May 17, 2007) (doc. # 28), the City's

Reply (filed May 23, 2007) (doc. # 29), Mr. Mott's additional response (filed June 22,

2007) (doc. # 31), the pleadings, the entire case file, and the applicable law and is

sufficiently advised in the premises.[1]


I.      Statement of the Case

        Mr. Mott is currently incarcerated at the Trinidad Correctional Facility in Trinidad,

---

        [1]     Mr. Mott's response filed on June 22, 2007 (*see* docs. # 31, # 33, and #
34) is identical to his response filed on May 17, 2007 (doc. # 28).

Colorado.  (*See* doc. # 34 at p. 5).  This action arose out of Mr. Mott's arrest in El Paso

County on February 1, 2005.  Mr. Mott alleges that he and his girlfriend, Judith

Williams, were arguing after she locked the car keys in the car.  Mr. Mott alleges that

Ms. Williams screamed and cursed at him because he did not call a locksmith and left

to catch a bus to work.  While Mr. Mott was waiting at the bus stop, two police officers

approached him and stated that they were "responding to a domestic incident."

(Complaint (doc. # 4) at p. 8 of 38).  Mr. Mott responded that he had "no knowledge of a

domestic incident."  (Complaint (doc. # 4) at p. 8 of 38).  The officers directed Mr. Mott

to their patrol car and arrested him.

On March 30, 2005, Mr. Mott was found not guilty at the conclusion of a jury trial

in Case No. 2005 M 000868.  (Complaint (doc. # 4) at p. 11, 25-27 of 38).  A second

charge, Case No. 2005 M 000867, was dismissed on March 30, 2005.  (Complaint

(doc. # 4) at p. 11, 22-24 of 38).  Mr. Mott filed this civil action on or about January 26,

2007, alleging four claims pursuant to 42 U.S.C. § 1983.  (*See* Complaint (doc. # 4) at

p. 4 of 38).  On March 8, 2007, the District Judge dismissed three of the named

Defendants pursuant to 28 U.S.C. § 1915A(b).  (*See* "Order to Dismiss in Part and to

Draw Case to a District Judge and to a Magistrate Judge" (doc. # 9)).  Mr. Mott's

remaining claims allege: (1) false arrest against Officers John Doe I and II in their

individual capacities (*see* Complaint (doc. # 4) at p. 14 of 38); (2) malicious prosecution

against Officers John Doe I and II in their individual capacities (*see* Complaint (doc. #

4) at p. 15 of 38); (3) abuse of process against Officers John Doe I and II in their

individual capacities (*see* Complaint (doc. # 4) at p. 17 of 38); and (4) negligence

2

against Officers John Doe I and II in their official capacities and against the City based on a government policy or custom (*see* Complaint (doc. # 4) at p. 19 of 38).   As relief, Mr. Mott seeks monetary damages.  (*See* Complaint (doc. # 4) at pp. 36-37 of 38). The City moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims against it for failure to state a claim upon which relief can be granted.

II.   Standard of Review

The court is empowered to dismiss an action "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, L.L.C.*, — F. 3d —, —, 2007 WL 2019752 at * 3 (10th Cir. (N. M.) July 13, 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).  The court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Alvarado*, 2007 WL 2019752 at * 3 n. 2 (citation omitted).  *See also Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1969-69 (2007) ("the old standard, 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' is 'best forgotten as an incomplete, negative gloss on an accepted pleading standard.' "[2]

---

[2]      The court notes that its Recommendation in this case would be the same regardless of whether it applied "the old 'no set of facts' standard, *see, e.g., David*, 101 F.3d at 1352, or . . . either a plausibility standard or a requirement that the complaint

III.    Analysis

A.    City's Motion to Dismiss

Mr. Mott alleges that he is suing the Defendant Officers in their official capacity based on their negligence. (*See, e.g.,* Complaint at p. 19 of 38). Mr. Mott alleges that this is equivalent to a suit against the City based on "vicarious liability." (*See* Complaint at pp. 19, 21 of 38). Mr. Mott further alleges that the City negligently "failed to train members of its police force adequately in domestic violence issues." (*See* Complaint at pp. 20, 21 of 38). Mr. Mott's claims against the City are legally deficient.

1.    Negligence

Claims of § 1983 liability may not be predicated on negligence. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662 (1986). *See also Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability"). To the extent that Mr. Mott's claims are based upon negligent conduct by any of the Defendants, such claims are properly dismissed with prejudice.

2.    Vicarious Liability

"Municipalities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights." *Marshall v. Columbia Lea Regional*

---

include factual allegations sufficient to 'raise a right to relief above the speculative level.'" *See Alvarado v. KOB-TV, L.L.C.*, — F. 3d at —, 2007 WL 2019752 at * 3 n. 2. (citing *Bell Atlantic Corp.*, 127 S. Ct. at 1965).

Hospital, 345 F.3d 1157, 1177 (10th Cir. 2003) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 689-90 (1978) (holding that municipalities and other local governmental bodies are "persons" within the meaning of 42 U.S.C. § 1983).  "A municipality, however, cannot be held liable for the actions of its employees under the theory of *respondeat superior*."  *Marshall*, 345 F.3d at 1177 (citation omitted).  To the extent that Mr. Mott's claims are based on "vicarious liability," they are not cognizable against the City under § 1983 and are properly dismissed with prejudice.

3.    Municipal Liability

"Plaintiffs seeking to impose liability on a municipality under section 1983 must identify a municipal 'policy' or 'custom' causing their injury."  *Marshall*, 345 F.3d at 1177 (citation omitted).  *See also Bryan County v. Brown*, 520 U.S. 397, 403 (1997) ("[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.") (citations omitted).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404.

"An unconstitutional deprivation is caused by a municipal 'policy' if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be

said to be those of the municipality itself." *Marshall*, 345 F.3d at 1177 (citation

omitted).  To warrant liability, the alleged policy must be a "policy statement, ordinance,

regulation, or decision officially adopted and promulgated" by the public entity's

officers. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (internal

quotation marks and citation omitted).  A decision that "was a 'course of action

consciously chosen from among various alternatives' " generally implies a policy. *J.B.*

*v. Washington County*, 127 F.3d 919, 924 (10th Cir. 1997).

"If a violation cannot be characterized as official policy, then [a municipality may]

still be held liable if the practice is so permanent and well-settled as to constitute a

custom or usage with the force of law." *Lankford*, 73 F.3d at 286 (internal quotation

marks and citations omitted).  *See also Camfield v. City of Oklahoma City*, 248 F.3d

1214, 1229 (10th Cir. 2001) ("a municipality may be held liable when the illegal practice

is so permanent and well settled as to constitute a custom or usage with the force of

law") (internal quotation marks and citation omitted).  " '[C]ustom' has come to mean an

act that, although not formally approved by an appropriate decision maker, has such

widespread practice as to have the force of law." *Marshall*, 345 F.3d at 1177 (citation

omitted).

Mr. Mott acknowledges that his "complaint does not allege an official policy, but

rather a municipal 'custom.' " (*See* Response (doc. # 28) at p. 2 of 6).  Mr. Mott

concedes that he "can not show the existence of an explicitly stated rule or regulation,"

but alleges an "inferred official policy or custom" based on "the arrest of one or both

parties in most domestic disputes." (*See* Response (doc. # 28) at p. 2 of 6).  Mr. Mott

6

alleges that

> "[t]his knowledge is well known.  All one has to do is a simple statistical
> survey in the population of Colorado Springs pertaining to domestic
> violence.  One would surely find that a majority of the population knows
> that in the event of a domestic incident, 'someone is going to jail.'

(*See* Response (doc. # 28) at p. 2 of 6).

Mr. Mott bases his claim against the City on the single incident of his arrest.

Ordinarily, '[p]roof of a single incident of unconstitutional activity is not sufficient to

impose [municipal] liability.' " *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)

(quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993)).  "In the case

where a plaintiff seeks to impose municipal liability on the basis of a single incident, the

plaintiff must show the particular illegal course of action was taken pursuant to a

decision made by a person with authority to make policy decisions on behalf of the

entity being sued." *Jenkins*, 81 F.3d at 994 (citing *Pembaur v. City of Cincinnati*, 475

U.S. 469, 483-85 (1986).  *See also Butler,* 992 F.2d at 1055 (the plaintiff must prove

the single incident was "caused by an existing, unconstitutional municipal policy, which

policy can be attributed to a municipal policymaker").

Mr. Mott's allegations do not rise to the level of a custom "that, although not

formally approved by an appropriate decision maker, has such widespread practice as

to have the force of law." *Marshall*, 345 F.3d at 1177 (citation omitted).  Mr. Mott has

not specifically alleged any other arrests made without probable cause by Officers John

Doe I and II or any other officers.  Absent sufficient allegations of supervisory

indifference, such as acquiescence in a prior pattern of conduct, the court cannot infer

official policy from a single incident of illegality such as a first arrest without probable

cause.  Mr. Mott has not alleged an unconstitutional policy attributable to a municipal

policymaker, sufficient to progress past the pleading stage.  *See Oklahoma City v.*

*Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) (single incident of

unconstitutional activity not sufficient to impose  municipal liability unless incident

includes proof that it was caused by existing unconstitutional policy attributable to

municipal policymaker).

Mr. Mott has also alleged that the City was negligent in failing "to train members

of its police force adequately in domestic violence issues." (Complaint (doc. # 4) at p.

20 of 38). Mr. Mott alleges that "there is now . . . a domestic violence program of

intensive training." (Complaint (doc. # 4) at p. 20 of 38).  "In the absence of an explicit

policy or an entrenched custom, 'the inadequacy of police training may serve as a basis

of § 1983 liability . . . where the failure to train amounts to a deliberate indifference to

the rights of persons with whom the police come into contact.' " *Olsen v. Layton Hills*

*Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002).  In *City of Canton , Ohio v. Harris*, the

Supreme Court held that a municipality may be held liable for a failure to train only

when that failure "evidences a 'deliberate indifference' to the rights of the inhabitants. .

. . Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a

municipality-a 'policy' as defined by our prior cases-can a city be liable for such a

failure under § 1983." 489 U.S. 378, 389 (1989)  (quoting *Oklahoma City v. Tuttle*, 471

U.S. at 823).  Deliberate indifference to constitutional rights "occurs when the need for

more or different action 'is so obvious, and the inadequacy [of the current procedure] so

8

likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at  390.

Mr. Mott's allegation of the City's failure to train regarding a single arrest is not an adequate basis for municipal liability under *Monell*.  *Butler*, 992 at 1055-56 (citing *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989).  Mr. Mott's allegations are merely conclusory and speculative.  Mr. Mott has not alleged when Officers John Doe I and II were trained or how the training was inadequate.  The single incident alleged by Mr. Mott, even coupled with the alleged failure to train, is inadequate to support a finding of an affirmative link between the actions of the arresting officers and the City. *Butler*, 992 F.2d at 1056.

As Mr. Mott has not sufficiently alleged a violation of § 1983 by the City, the City is properly dismissed from this civil action.


B.	Defendants Officers John Doe I and II

Mr. Mott is suing two unidentified police officers.  There is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit.  *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984);  *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982).  To the contrary, the Federal Rules provide:

> "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a).  In the complaint, the title of the action shall include the names of all

the parties . . . ."

Fed. R. Civ. P. 10(a).  Officers John Doe I and II are properly dismissed from this action

for the reason that anonymous parties are not permitted by the Federal Rules.

In addition to his claim for negligence, Mr. Mott alleges claims pursuant to §

1983 against Officers John Doe I and II for false arrest without probable cause,

malicious prosecution, and abuse of process.  Even if Mr. Mott had identified Officers

John Doe I and II, his allegations fail to state a claim against them.

1.     False Arrest

To maintain a false arrest claim under § 1983, Mr. Mott must demonstrate the

elements of a common law claim and show that his Fourth Amendment right to be free

from unreasonable search and seizure has been violated.  *See Taylor v. Meacham*, 82

F.3d 1556, 1561 (10th Cir. 1996) ("our circuit takes the common law elements of

malicious prosecution as the 'starting point' for the analysis of a § 1983 malicious

prosecution claim, but always reaches the ultimate question, which it must, of whether

the plaintiff has proven a constitutional violation.").  *See also Walker v. Briley*, 140 F.

Supp. 2d 1249, 1257 n. 6 (N.D. Ala. 2001) (while the "core issue with respect to any

section 1983 claim is whether a constitutional violation occurred, not whether the

elements of a particular common law tort can be made out, . . . common law is often a

proper starting point for examining the elements and immunities applicable to section

1983 claims.").  A claim for false arrest cannot stand if there was probable cause to

arrest.  *Rose v. City & County of Denver*, 990 P.2d 1120, 1123 (Colo. App. 1999).

10

Mr. Mott alleges that Officers John Doe I and II illegally arrested him without probable cause, in violation of his Fourth Amendment rights. (*See* Complaint (doc. # 4) at pp. 6-14 of 38). Mr. Mott argues that Officers John Doe I and II did not have probable cause to arrest him because they "did not have personal knowledge of the events," but "only obtained information from the supposed victim at her residence."

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citations omitted). "Probable cause exists 'where facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed.' " *Marshall*, 345 F.3d at 1166 (quoting *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985). "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.' " *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (internal quotation marks and citation omitted).

"[T]he probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all. . . ." *Romero v.*

11

*Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995).  Information obtained from a person who

the officer has reasonable grounds to believe may be telling the truth may provide

adequate support for a finding of probable cause. *See Miloslavsky v. AES Engineering*

*Society, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992).  When probable cause has been

gained from a reasonably credible victim or eyewitness, there is no constitutional duty

to investigate further.  *Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2001).  An

officer who has probable cause to arrest is not required to conduct further investigation

for exculpatory evidence or to pursue the possibility that the suspected offender is

innocent.  *See Simkunas v. Tardi*, 930 F.2d 1287, 1292 (7th Cir. 1991) ("Having

uncovered sufficient evidence to establish probable cause," officers had "no

constitutional obligation to conduct any further investigation in the hopes of uncovering

potentially exculpatory evidence.") (citation omitted);  *Marx v. Gumbinner*, 905 F.2d

1503, 1507 n. 6 (11th Cir. 1990) (although victim's report "could indicate that someone

other than Marx was the rapist, defendants were under no obligation to give credence

to this theory.") (citation omitted);  *Franco-de Jerez v. Burgos*, 876 F.2d 1038, 1042 (1st

Cir. 1989) (finding no constitutional duty to investigate further, so as to confirm or

disprove initial finding of probable cause) (citations omitted).  An arresting officer is not

required to hold a trial at the scene of an apparent crime to determine the credibility of

witnesses.

Mr. Mott alleges that the victim contemporaneously reported the crime to Officers

John Doe I and II.  Mr. Mott has not alleged any basis for the Officers to disbelieve the

victim's report.  Mr. Mott's own allegations establish that it was reasonable for Officers

12

John Doe I and II to provisionally accept the statements of the victim.  The allegations

in the Complaint establish that probable cause to arrest existed – a complete defense

to Mr. Mott's claim for false arrest.  *See Morfin v. City of East Chicago*, 349 F.3d 989,

997 (7th Cir. 2003) ("It is well settled that the actual existence of probable cause to

arrest precludes a § 1983 suit for false arrest.") (citations omitted).


     2.     Malicious Prosecution

While Mr. Mott may pursue a claim of malicious prosecution under § 1983, his

only constitutional remedy is under the Fourth Amendment.  *Albright v. Oliver*, 510 U.S.

266, 271-75 (1994) (plurality).  In the Tenth Circuit, "state law provides the starting

point for analyzing a Fourth Amendment claim for malicious prosecution under § 1983."

*Erickson v. Pawnee County Board of County Commissioners*, 263 F.3d 1151, 1154

(10th Cir. 2001) (citation omitted).  To maintain a malicious prosecution claim under §

1983, a plaintiff must demonstrate the elements of a common law claim and show that

his Fourth Amendment right to be free from unreasonable search and seizure has been

violated.  *Taylor*, 82 F.3d at 1561.

One of the essential elements of a malicious prosecution claim under Colorado

law is that there was no probable cause for the charges against the plaintiff.  *See*

*Walford v. Blinder, Robinson & Co.*, 793 P.2d 620, 623 (Colo. App.) ("To establish a

claim for malicious prosecution, a plaintiff must prove by a preponderance of the

evidence that the defendant was a party to or assisted in a criminal or civil proceeding

against the plaintiff, that the proceeding was resolved in favor of plaintiff, that there was

13

no probable cause for the proceeding, that the defendant was actuated by malice in instituting the proceedings, and that the plaintiff was damaged thereby.") (citations omitted)).  As the court has determined that the allegations in the Complaint establish probable cause for Mr. Mott's arrest, Mr. Mott's claim for malicious prosecution fails.

3.    Abuse of Process

The elements of a claim for abuse of process under Colorado law are: "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, *i.e.*, use of a legal proceeding in an improper manner; and (3) resulting damage." *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App. 1998).  *See also Swanson v. Bixler*, 750 F.2d 810, 814 (10th Cir. 1984) (same) (citation omitted).  A plaintiff must establish there was an objectively improper use of the process.  *James H. Moore & Assoc. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994). "Classic examples of the requisite improper use include the use of process to accomplish a coercive goal which is not the intended legal purpose of the process ." *Id.*

First, as the court has concluded that probable cause existed for Mr. Mott's arrest, Defendants had justification for the use of a judicial proceeding.  *See Golden v. City of New York*, 418 F. Supp. 2d 226 (E.D.N.Y. 2006) (citing *Granato v. City of New York*, 1999 WL 1129611 *7 (E.D.N.Y.1999) ("a showing of probable cause . . . suffices also to establish excuse or justification for the purposes of a defense to abuse of process.") (internal quotation marks and citations omitted)); *Frederick v. Hanna*, 2006

14

WL 3489745, at * 8 (W.D. Pa. Dec. 1, 2006) ("[w]hether raised under Section 1983 or state law, claims for false arrest, malicious prosecution, and abuse of process require a lack of probable cause.") (citations omitted).[3]  As the pleadings state an objective basis for the arrest, abuse-of-process is not cognizable as a claim separate from a claim that there was no probable cause to arrest Mr. Mott or institute a prosecution against him. *See Santiago*, 891 F.2d at 388 ("proof of abuse of process alone cannot support a finding of liability under § 1983").

Further, Mr. Mott has not adequately alleged any improper purpose by Officers John Doe I and II.  Mr. Mott alleges

> I believe I was a victim of these officers' collateral objective.  That collateral objective being, the assurance of the meeting of their monthly arrest quota, to protect their jobs, or simply racial animus.  A racial animus, that, after the process was issued, would leave Officer John Doe I and Officer John Doe II's deeply embedded and concealed psychological prejudice, secretly and uniquely satisfied.

These allegations are merely conclusory and speculative.  Other than his own speculation, Mr. Mott alleges nothing about the Defendants' conduct, any arrest quota Defendants had, or any indications of racial animus.  (*See, e.g.,* Complaint (doc. # 4) at p. 9 of 38 ("He said it in a way that could have been taken as racial discrimination, as if a black person couldn't possibly have a job like that.")).

In sum, Mr. Mott fails to state any claim against Defendants Officer John Doe I and II upon which relief can be granted.[4]

---

[3]      A copy of this unpublished decision is attached to this Recommendation.

[4]      The City may also properly be dismissed from this action based on the court's determination that Mr. Mott has failed to state a claim against Officers John Doe

I and II.  *See Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1155-56 (10th Cir. 2001) (where the officers did not commit a constitutional violation, the City cannot be held liable);  *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted); *Taylor*, 82 F.3d at 1564 ("Once the court concludes that the employee[s]," here Officers John Doe I and II, "committed no constitutional violation, the claim against the supervisory authority," here the City, "is properly dismissed.").  For this reason also, the City is properly dismissed from this civil action.

Accordingly, IT IS RECOMMENDED that:

1.      Defendant City of Colorado Springs' Motion to Dismiss (filed May 2, 2007) (doc. # 25) be GRANTED and that Defendant City of Colorado Springs be DISMISSED from this civil action for failure to state a claim upon which relief can be granted.

2.      Defendants Officers John Doe I and II be DISMISSED from this civil action for the reasons that anonymous parties are not permitted by the Federal Rules and that the pleadings fail to state a claim against them upon which relief can be granted.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The District Judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The District

Judge may accept, reject, or modify, in whole or in part, the recommendations or findings made by the Magistrate Judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 3rd day of August, 2007.

BY THE COURT:


   s/Craig B. Shaffer     
United States Magistrate Judge



Not Reported in F.Supp.2d                                                                                         Page 1
Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Frederick v. Hanna
W.D.Pa.,2006.
Only the Westlaw citation is currently available.
United States District Court,W.D. Pennsylvania.
Martin FREDERICK and Barbara Frederick, his
wife, Plaintiffs,
v.
Elias HANNA, John Johnson, Manor Borough, Of-
ficer Steffey and Penn Township, Defendants.
**Civil Action No. 05-514.**

Dec. 1, 2006.

Amy S. Cunningham, Greensburg, PA, for
Plaintiffs.
Paul D. Krepps, John F. McCabe, Marshall, Den-
nehey, Warner, Coleman & Goggin, Pittsburgh, PA,
for Defendants.

***OPINION and ORDER OF COURT SYNOPSIS***
AMBROSE, Chief District Judge.
**\*1** In this civil action, Plaintiffs claim that Defend-
ants, who are police officers and their employers,
violated their rights under 42 U.S.C. § 1983 and the
state and federal constitutions, and committed sev-
eral common law torts. All of the claims arise out
of a series of events stemming from a traffic stop
and subsequent confrontation at Plaintiffs' place of
business, and culminating in the arrest of husband-
Plaintiff and both Plaintiffs' guilty pleas on charges
of disorderly conduct.

In brief, Plaintiffs contend that Defendant Hanna, a
police officer employed by Manor Borough, ap-
proached Plaintiffs' business premises with the
stated purpose of investigating an expired vehicle
registration plate. A confrontation ensued, during
which both Defendant Steffey, a police officer em-
ployed by Penn Township, and wife-Plaintiff ar-
rived on the scene. Husband-Plaintiff was arrested
and transported to the police department, and then
Officers Hanna and Johnson transferred him to
county prison. Both Plaintiffs were charged with
various crimes, and each pleaded guilty to dis-

orderly conduct. They were not, ultimately, prosec-
uted on any other charge.

All Defendants have filed Motions for Summary
Judgment. Officer Steffey and Penn Township seek
judgment on all of Plaintiffs' claims against them;
the remaining Defendants seek judgment on all
claims other than a single excessive force claim.

For the following reasons, Defendants' Motions will
be granted in part and denied in part.

*DISCUSSION*

*A. FACTS*

Unless otherwise indicated, the following facts are
undisputed.

On April 19, 2003, husband-Plaintiff and Plaintiffs'
employee, John Konechny, were washing a 1995
silver Toyota Tercel at a car wash. In order to wash
the car, husband-Plaintiff removed the license plate,
and then replaced it prior to leaving the car wash.
While at the car wash, Defendant Hanna, a Manor
Borough police officer, observed them washing the
car without a plate, and then saw husband-Plaintiff
fasten a plate onto the car. The plate was not se-
curely fastened to the vehicle; it was falling off.
When the vehicle left the car wash, Officer Hanna
followed, and, at some point while on the roadway,
observed that the registration sticker on the plate
was expired. Officer Hanna then followed the car to
Plaintiffs' place of business, and activated his
lights. The parties dispute whether the lights were
activated at the time that Defendant Hanna pulled
into Plaintiffs' property, or during the drive from
the car wash to Plaintiffs' property.

At some point, Defendant Hanna radioed dispatch
to call in the license plate, and received a report of
a "dead" plate. A dead plate indicated either that
the vehicle lacked insurance, or that the plate or
vehicle was stolen. Defendant Hanna was also ad-
vised that the license plate did not match the car
that the men were driving.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

Husband-Plaintiff and Mr. Konechny drove the vehicle into a garage located at Plaintiffs' place of business, a detail shop located at 160 Race Street. The garage was not open to the general public, but only to employees, former employees, or casual laborers. Defendant Hanna stopped his vehicle at the entrance to the garage, blocking the other vehicle into the garage. The two men exited the Toyota, and husband-Plaintiff removed the license plate from the car and placed it in the garage. Husband-Plaintiff testified that he placed the plate into a plastic file mounted to the wall in front of the garage. There is also some evidence that he placed the plate toward the rear of the garage. Defendant Hanna then asked him for the plate; husband-Plaintiff did not, however, produce the plate that was removed from the vehicle. Husband-Plaintiff waved his arms, used profanity, and yelled at Defendant Hanna at some point during the confrontation. At some point, husband-Plaintiff obtained a license plate from another vehicle and offered it to Defendant Hanna.

**\*2** At some point thereafter, Defendant Hanna entered the garage and obtained the invalid license plate. He obtained the plate on his own, he testified, because he was concerned that the evidence could be destroyed had he waited to obtain a warrant. During the course of events, husband-Plaintiff repeatedly ordered Defendant Hanna to leave his property.

At some point, Defendant Hanna obtained Mr. Konechny's drivers license number and called it in to dispatch. Mr. Konechny attempted to write down Defendant Hanna's license plate number, and Defendant requested that he stand in front of the vehicle. Husband-Plaintiff then attempted to go back into the garage and close the garage door; Defendant Hanna tried to pull the door open. Defendant Hanna then called for backup. Either before or after the garage door incident, Defendant Hanna told husband-Plaintiff that he was under arrest; husband-Plaintiff then moved to the back of the garage. Defendant Hanna perceived that he was attempting to avoid the arrest.

Defendant Hanna then asked husband-Plaintiff to exit the garage and put his hands on the police car. Husband-Plaintiff put his hands behind his back, and then, as he was being handcuffed, thought he had done nothing wrong, and then spun around to face Defendant Hanna, with his hands at his sides. He then avers that Defendant Hanna started to choke him. At some point thereafter, Defendant Hanna pepper sprayed him. Plaintiffs aver that husband-Plaintiff walked away from the officer about six to eight feet, and then was sprayed. He was then handcuffed, and placed in Defendant Hanna's police car.

Plaintiffs proffer that husband-Plaintiff remained in the police car, without medical treatment, for up to forty-six minutes, before he ultimately received treatment at the police station. There is no allegation of injury from the pepper spray, other than temporary burning.

After husband-Plaintiff was placed in the police car, backup police officers arrived, including Defendant Steffey, a Penn Township police officer. Defendant Steffey had been dispatched to assist Officer Hanna with a disorderly person and aggravated assault. Defendant Hanna told Officer Steffey that he had witnessed a man put a plate on the car at the car wash, had followed the car, turned on his lights, the car did not stop but turned into the garage, and then the man came out and took the plate off the car. He also told Defendant Steffey that there had been an altercation between him and husband-Plaintiff.

Penn Township had a general policy to obtain a vehicle identification number ("VIN") in the case of a falsified plate, or a plate removed from a vehicle, in order to verify ownership and determine whether the vehicle is stolen.

Defendant Steffey then entered the garage, walked up to the car, and attempted to get the VIN off the dashboard. He experienced some problem with transmitting the VIN number through Defendant Steffey's radio, so he entered the garage for a second time to get the VIN. Wife-Plaintiff then ar-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

rived, and blocked his path. He advised her that he needed to obtain the VIN from the vehicle, and that he would leave as soon as he had done so. He obtained the VIN from the dash and properly transmitted the information. Wife-Plaintiff avers that when she attempted to move toward the vehicle to show the officers the VIN on the door post, Defendant Steffey shoved her backwards and she caught herself by grabbing the car. She suffered no immediate pain, but later received medical treatment for a whiplash-type injury. After the incident, she left the garage to go down to a car lot; when she returned, the officers were gone. She then proceeded to the police station.

**\*3** Husband-Plaintiff was, eventually, transported to the Manor Borough Police Department, where he received medical treatment for the effects of the pepper spray. He was then transported to a holding cell. Defendant Johnson was not involved in any of the incidents alleged prior to the transportation of husband-Plaintiff to the Westmoreland County Jail on April 20, 2003.

Husband-Plaintiff avers that at the County Jail, he saw wife-Plaintiff and their business partner. He tried to speak with his wife, but Defendant Hanna grabbed his hair and shoved him backwards and forwards, tripped him, and tried to drive his face into the curb. Plaintiffs further allege that Defendant Johnson grabbed husband-Plaintiff by the hair and pulled him towards the ground.

Wife-Plaintiff said that this was police brutality, and then both Defendants Hanna and Johnson screamed that "she better get back" or she would be arrested. Defendant Hanna told husband-Plaintiff that he would "thump" him if he made a false move, stepped out of line, or looked at him cross-eyed.

Husband-Plaintiff was charged with aggravated assault, simple assault, and resisting arrest, tampering with or fabricating physical evidence, disorderly conduct, and criminal mischief. Wife-Plaintiff was not arrested, but was charged with obstructing administration of law or other governmental function,

and disorderly conduct. Each Plaintiff ultimately pleaded guilty to a charge of disorderly conduct; FN1 the remaining charges were not prosecuted.

> FN1. 18 Pa.C.S. § 5503 reads, in pertinent part, as follows:
> (a) OFFENSE DEFINED.-A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
> (b) GRADING.-An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

**B. *SUMMARY JUDGMENT STANDARD***

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. V. Stauffer Chem. Co.,* 898 F.2d 946, 949 (3d Cir.1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *United States v. Onmi-care, Inc.,* 382 F.3d 432 (3d Cir.2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 4
Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

party's case, and on which that party will bear the burden of proof. *Celotex Corp. V. Cattrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986).

### C. DEFENDANTS' MOTIONS

A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must demonstrate that "(1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes ." *Anderson v. Davila,* 37 V.I. 496, 125 F.3d 148, 159 (3d Cir.1997).

### 1. First Amendment

**\*4** I first address Defendants Manor Borough, Hanna, and Johnson's motion for summary judgment on Plaintiffs' First Amendment claim. Plaintiffs argue that Defendants violated their First Amendment rights in two particulars.FN2 They aver that wife-Plaintiff, while outside the courthouse, said that the Officers' actions toward her husband were police brutality, and the officers then "started screaming at her that she better get back or she was going to be arrested." Second, they aver that Officer Hanna told Mr. Frederick that he would "thump" him if he "made a false move, stepped out of line, or looked at [the Officer] cross-eyed." In challenging those claims, Defendants argue only that First Amendment claims typically arise in the employment context, or from the restriction of speech on public property. They point out, quite cursorily, that Plaintiffs have failed to adduce evidence of either type, and that "the circumstances of this case do not rise to the level [of] a First Amendment violation."

> FN2. Although their Amended Complaint potentially implicates additional First Amendment issues, Plaintiffs defend only these two grounds for such a claim.

Contrary to Defendants' assertion, however, Plaintiffs have proffered evidence that the alleged First Amendment violations occurred outside of the County Jail, on public property. Therefore, Plaintiffs have undermined Defendants' only potentially applicable challenge to this set of claims. Defendants do not contend, for example, that either of the Plaintiff's alleged "speech" was unprotected. In other words, their argument is inapposite to the facts, and they do not address any other possible deficiencies in Plaintiff's claim. Despite the Plaintiffs' likewise threadbare defense of their free speech claim, I decline to *sua sponte* analyze whether there are other reasons that the present facts fail to rise to the level of a constitutional violation. Therefore, Defendants have not demonstrated that they are entitled to the entry of judgment on Plaintiffs' free speech claims, and I will deny their Motion in that regard.FN3

> FN3. For the same reasons, Defendants have not met their burden of demonstrating entitlement to qualified immunity on the First Amendment claim. "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.' " *Hill v. Borough of Kutztown,* 455 F.3d 225 (3d Cir.2006). Here, Defendants have not established that Plaintiff failed to allege the deprivation of a constitutional right, and they raise no argument based on the second prong of the qualified immunity analysis.

### 2. Fourteenth Amendment

Next, I address Defendants' Motion for summary judgment on Plaintiffs' due process claim.FN4 The substantive due process clause of the Fourteenth Amendment requires application of a "shocks the conscience" standard, in which "only the most egregious [executive] official conduct can be said to be 'arbitrary in the constitutional sense.' "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*Collins v. Harker Heights,* 503 U.S. 115, 129, 117 L.Ed.2d 261, 112 S.Ct. 1061 and 126 (1992). The threshold question is whether the conduct at issue is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Kaucher v. County of Bucks,* 455 F.3d 418, 425 (3d Cir.2006).

> **FN4.** Plaintiffs appear to have abandoned any claim under the procedural due process or equal protection clause of the Fourteenth Amendment.

The standard to be met before conduct can be deemed "conscience shocking" is heightened as the situation intensifies or is deemed an emergency, requires judgment on the spot with little opportunity to contemplate one's actions, and entails countervailing governmental interests. *Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998). "[A] brief skirmish giving rise to minor injuries" does not rise to the level of a constitutional violation. *Metcalf v. Long,* 615 F.Supp. 1108, 1121 (D.Del.1985). Similarly, every instance even of unequivocally excessive force does not give rise to a Fourteenth Amendment violation. *Morrison v. Martin,* 755 F.Supp. 683, 690 (D.N.C.1990).

**\*5** It is not clear which action, in particular, Plaintiffs claim violated their right to substantive due process. Plaintiffs do not isolate nor discuss any particular incident that they intend to prosecute under the due process umbrella. Given the intimation that Plaintiffs intend to base such a claim on Officer Steffey's shove of wife-Plaintiff, I specifically find that the *de minimis* force used in that context was not, as a matter of law, so outrageous and egregious so as to violate the Constitution. Absent further guidance from Plaintiffs, I decline to speculate regarding any additional potential claims. Plaintiffs cannot proceed under any substantive due process claim.[FN5]

> **FN5.** Moreover, because Plaintiffs have failed to make out a constitutional violation, the officers are entitled to immunity

on any substantive due process claims. *Bennett v. Murphy,* 274 F.3d 133, 136 (3d Cir.2002).

### 3. *Fourth Amendment*

#### a. *Excessive Force*

Next, I address Defendants' challenge to Plaintiffs' excessive force claims. Plaintiffs appear to allege the use of unreasonable force in the following particulars: Defendants Johnson's and Hanna's use of force against husband-Plaintiff at the county jail; Defendant Hanna's use of pepper spray on husband-Plaintiff; and Defendant Steffey's push or shove of wife-Plaintiff while at the Race Street garage. Defendants move for summary judgment only on claims involving the latter two incidents. They argue, essentially, that the officers' conduct was reasonable under the circumstances.

Claims that law enforcement officers have used excessive force in the course of an arrest are to be evaluated under Fourth Amendment "reasonableness" standards. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The inquiry is whether the officers' actions are objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

The reasonableness of a particular use of force, therefore, must be assessed with "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir.1997). Whether the force used was reasonable is usually a jury question. *Mc-Cracken v. Freed,* Np. 03-4923, 2006 U.S. Dist.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

LEXIS 924, at *18 (E.D.Pa. Jan. 6, 2006).

In this case, there are genuine issues of material fact that preclude the entry of judgment on Plaintiffs' excessive force claim against Defendant Hanna. For example, accepting the facts in the light most favorable to Plaintiffs, husband-Plaintiff walked six to eight feet away from the Officers immediately prior to being sprayed, there is no suggestion that he was armed, and no suggestion that Officer Hanna had to contend, in any significant respect, with other persons at that moment. The parties' and witnesses' conflicting testimony, as well as the fair amount of confusion in the chronology of events at issue, precludes me from determining as a matter of law that Defendant Hanna's use of pepper spray was objectively reasonable under the circumstances.

**\*6** For this reason, too, I must deny Defendant Hanna's claim to qualified immunity regarding his use of force. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Couden v. Duffy,* 446 F.3d 483, 492 (3d Cir.2006). "Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro v. City of Elizabeth,* 436 F.3d 397, 405 (3d Cir.2006). Finally, a defendant has the burden to establish that he is entitled to qualified immunity. *See Beers-Capitol v. Whetzel,* 256 F.3d 120, 142 n. 15 (3d Cir.2001). Here, evaluation of the situation confronted by Defendant, as well as the precise nature of his conduct, rests on disputed facts that must be resolved by a jury.

I reach a different conclusion, however, with respect to Defendant Steffey's alleged shove of wife-Plaintiff. Wife-Plaintiff was not arrested, and therefore cannot maintain a Fourth Amendment claim against Defendant. *Buss v. Quigg,* 2002 U.S. Dist. LEXIS 15092, at *7 (E.D.Pa. Aug. 1, 2002). Furthermore, for the reasons set forth *supra,* she cannot maintain an excessive force claim under the sub-

stantive due process clause of the Fourteenth Amendment. Plaintiffs suggest no other potentially applicable cause of action. Summary judgment, therefore, will be granted against Plaintiffs for all claims arising out of Defendant Steffey's use of force against wife-Plaintiff.

**b. *Search & Seizure***

I next address Defendants' argument that they are entitled to qualified immunity regarding Fourth Amendment claims resting on the arrest of husband-Plaintiff, the corresponding search of the Plaintiffs' garage, and any claim regarding wife-Plaintiff. Plaintiffs do not attempt to defend their Fourth Amendment claim surrounding husband-Plaintiff's initial arrest; I assume, therefore, that they have abandoned that claim.[FN6] Instead, they assert that their Fourth Amendment claims surround the alleged seizure of the Toyota's VIN, the search of the garage to obtain the VIN and license plate, and the seizure of the license plate that husband-Plaintiff removed from the vehicle.[FN7]

> [FN6.] In any event, it is unlikely that Plaintiffs could maintain such a claim. "[T]he Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine." *Pepiton v. City of Farrell,* No. 05-573, 2005 U.S. Dist. LEXIS 23873, at *9 (W.D.Pa. Oct. 10, 2005). Even the commission of a minor offense in an officer's presence justifies an arrest, and without violating the Fourth Amendment. *Id.* at *8. In *Pepiton,* the Court found that there existed probable cause for the arrest of a person driving a vehicle with an expired inspection sticker. *Id.* at *9. Although Plaintiffs dispute whether Defendant Hanna saw the expired sticker at the car wash or after he pulled out onto the road, they do not dispute that he did, in fact, see the expired sticker prior to the arrest. Pennsylvania law requires that "[e]very registration plate shall, at all times, be securely fastened to the vehicle

to which it is assigned." 75 Pa.C.S. § 1332(a). Further, an expired registration sticker is a violation of state law. 75 Pa.C.S.A. § 1301(a).

FN7. Plaintiffs also appear to argue that Defendant Steffey's shove of wife-Plaintiff in the garage constituted a seizure, because it restricted her freedom of movement. "A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to *terminate* his freedom of movement." Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir.2000) (emphasis added). This claim cannot survive for the same reasons that it cannot survive couched as a false imprisonment claim, as discussed *infra;* Defendant Steffey's conduct did not restrict wife-Plaintiff's freedom of movement in a legally significant manner, in this context.

A warrantless seizure or search of property typically requires a showing of both probable cause and exigent circumstances. United States v. Burton, 288 F.3d 91, 100 (3d Cir.2002). Exigent circumstances exist when officers reasonably believe that a person is in imminent danger, by "hot pursuit of a fleeing felon," "imminent destruction of evidence," or "the need to prevent a suspect's escape." Minnesota v. Olson, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir.1996).

The parties submissions also implicate the principle that police may seize incriminating evidence in plain view during the course of a lawful search. United States v. Menon, 24 F.3d 550 (3d Cir.1994). Moreover, under the plain view doctrine, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." Horton v. Cal., 496 U.S. 128, 137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); United States v. Sparks, 291 F.3d 683, 690 (10th Cir.2002).

**\*7** Typically, a Fourth Amendment claim cannot be

based on the "seizure" of a VIN number. "An automobile's [VIN], located inside the passenger compartment, but visible from outside the car, does not receive Fourth Amendment protection: it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." *United States v. Ellison,* No. 04-1925, 2006 U.S.App. LEXIS 22558, at *10 (6th Cir. Sept. 5, 2006). Indeed, the events that precipitated this litigation arose when the vehicle, and its VIN, were out in a public location. Moreover, the fact that wife-Plaintiff attempted to show Defendant Steffey the VIN number on the vehicle further belies an argument that there was any expectation, reasonable or otherwise, of privacy in that number.

There remain questions, however, regarding the legitimacy of Defendant Steffey's entry into the garage in order to obtain the VIN .FN8 It is undisputed that Plaintiffs did not consent to the entry into the garage and correlated search thereof; it is also undisputed that Defendant Steffey had no warrant when he entered the garage. He does not suggest that he could see the VIN from outside of the garage. Moreover, the Toyota had been blocked into the garage by a police car, and several other officers were on the scene at the time of Defendant Steffey's entry. There is no evidence to support an argument that, for example, officers were unable to secure the scene while a warrant was obtained, or that destruction or removal of the car or VIN was imminent. Moreover, any relevant "pursuit" was long over by the time Defendant Steffey entered the Plaintiffs' garage. In other words, there can be no legitimate argument based on either exigent circumstances or plain view. Defendants' arguments implicate no other exception to the warrant requirement.

FN8. Moreover, "the State's intrusion into a particular area ... cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy.' " New York v. Class, 475 U .S. 106, 112, 106 S.Ct. 960, 89

L.Ed.2d 81 (1986) (quoting *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Defendants cite, in fairly cursory fashion, to the principle that officers are not prohibited from entering business premises, during business hours, in a manner expected of the public. Therefore, they argue, Plaintiffs had no legitimate expectation of privacy in the garage at issue. Plaintiffs argue, just as cursorily, to the contrary. Plaintiffs, however, have proffered testimony that the garage was not open to the general public; Defendants' assertions to the contrary are unsupported by record evidence.

As regards Defendant Hanna's entry into the garage to seize the license plate, I reach a similar conclusion. It is undisputed that Officer Hanna observed husband-Plaintiff remove the license plate from the vehicle, and place it in the garage in a file folder mounted on the wall inside the garage. Husband-Plaintiff then declined to turn over the plate, upon request. Defendant Hanna then entered the garage and seized the plate. He testified that he feared the evidence would be destroyed had he waited for a warrant. In that vein, Defendants' sole defense of this conduct suggests both exigent circumstances and the "plain view" doctrine.

As discussed above, however, exigent circumstances did not exist, and I cannot find his conduct objectively reasonable on those grounds. Also pertinent to that issue, it is clear that Defendant Hanna was capable of calling for backup, as he in fact did so, and there is no suggestion that either Plaintiff attempted to take any action with respect to the subject license plate, after its initial placement into the file folder. Similarly, there is no argument that the plate was visible from outside the garage. Based on the arguments and facts here presented, there is no basis for finding a lawful right of access to the subject license plate.[FN9]

> **FN9.** As regards qualified immunity, Defendant Steffey's argument, without any legal citation, is based on the contention

that the driver of a suspicious vehicle could avoid a search by driving into a garage. Of course, with a warrant, or an exception to the warrant requirement, driving into a garage does not preclude search. Without a warrant or proper exception, of course, that driver might properly avoid a search. Defendant Hanna's qualified immunity argument is based, primarily, on his fear that the license plate would be destroyed. Under the facts here presented, however, the officers would not be entitled to qualified immunity. At a minimum, a reasonable officer in this situation would not have thought that warrantless entry onto the garage was justified.

#### 4. *Delay in Medical Treatment*

***8** Next, I address Plaintiffs' claim based on the alleged delay in medical treatment for effects of the pepper spray.[FN10] Nevertheless, an arrestee is entitled to medical care while in custody; a delay of care may violate the constitution if it constitutes deliberate indifference to a serious medical need. *E.g., Jennings v. Fetterman,* No. 06-1058, 2006 U.S.App. LEXIS 21080, at * *6-7 (3d Cir. July 27, 2006). "The nature of pepper spray is to cause pain that dissipates without causing serious injury." *Britton v. Lowndes County Sheriff's Dep't,* No. 1:04CV160, 2005 U.S. Dist. LEXIS 31648, at * *15-16 (D.Miss. Nov. 17, 2005). Following pepper spray, it is reasonable to wait until an arrestee is returned to the police station, and is in a more stable situation, to render treatment. *Davis v. Township of Paulsboro,* 421 F.Supp.2d 835 (D.N.J.2006).

> **FN10.** Plaintiffs cannot maintain an Eighth Amendment claim, as the pepper spray incident on which that claim is based arose prior to the conviction of a crime. *See, e.g., Ingraham v. Wright,* 430 U .S. 651, 671-672, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

Here, Plaintiffs assert that husband-Plaintiff was left untreated, with his eyes burning, for up to 46

minutes. He received treatment for the effects of the spray when he arrived at the police department. He does not aver any permanent injury; only significant but temporary stinging. This is not, therefore, a serious medical need requiring immediate treatment. Under the circumstances, as a matter of law, forty-six minutes is not an excessive or undue delay that could rise to the level of deliberate indifference or a constitutional violation. Judgment will be entered accordingly.

### 5. *State Law Claims*

#### a. *False imprisonment*

Next, I assess Plaintiffs' false imprisonment claim. According to their Brief, this claim is grounded in the allegation that Defendant Steffey, by shoving wife-Plaintiff and preventing her from moving toward the car, falsely imprisoned her. A claim of false imprisonment requires, in pertinent part, a showing that Defendant acted with the intent to confine Plaintiff within boundaries fixed by him. *Pennoyer v. Marriott Hotel Servs.,* 324 F.Supp.2d 614, 619-620 (E.D.Pa.2004). Moreover, the confinement "must be complete. If there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment." *Id.* at 620.

Here, even taking the facts in the light most favorable to Plaintiffs, there was no actionable confinement. Indeed, wife-Plaintiff testified that after she was shoved, she left the area and went down to the car lot; when she returned, the police officer Defendants had left, so she proceeded to the police station. Merely preventing wife-Plaintiff from touching a particular object-here, the vehicle under investigation-is simply not the equivalent of circumscribing her movement within particular boundaries. It is not, in other words, confinement or imprisonment of any kind. This claim cannot proceed, and judgment will be entered accordingly.FN11

> FN11. For the same reasons, wife-Plaintiff's movements were not restricted in such a way as to effect a Fourth Amend-

ment seizure of her person.

#### B. *False Arrest, Malicious Prosecution, and Abuse of Process*

I next address Plaintiffs' remaining state law claims. Whether raised under Section 1983 or state law, claims for false arrest, malicious prosecution, and abuse of process require a lack of probable cause. *E.g., Marable v. W. Pottsgrove Twp.,* No. 03-CV-3738, 2005 U.S. Dist. LEXIS 13754, at * *18-19 (E.D.Pa. Jul. 8, 2005) (Section 1983 false arrest and malicious prosecution); *Brockington v. Philadelphia,* 354 F.Supp.2d 563, 572 n. 10 (E.D .Pa.2005) (state law false arrest and imprisonment). Probable cause means "facts and circumstances ... that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Newsome v. Whitaker,* No. 03-3182, 2005 U.S. Dist. LEXIS 3446, at *14 (E.D.Pa. Mar. 4, 2005). A guilty plea establishes the existence of probable cause. *See Imbergamo v. Castaldi,* 392 F.Supp.2d 686, 696 (D.Pa.2005).FN12 In this case, both Plaintiffs pleaded guilty to disorderly conduct. Therefore, at a minimum, there is no genuine issue that there was probable cause to prosecute both of them on those charges.

> FN12. Moreover, as discussed *supra,* husband-Plaintiff could have been properly arrested based on the expired registration and loosely attached license plate. Wife-Plaintiff, of course, was not arrested at all.

*9 These claims fail for additional reasons. A claim for malicious prosecution requires, as implied by its name, that the subject prosecution occurred with malice. *In re Larsen,* 532 Pa. 326. Similarly, abuse of process requires that process be used for a purpose other than that for which the process was designed. *Hart v. O'Malley,* 436 Pa.Super. 151. Defendants suggest the evidentiary deficiencies in that regard, and Plaintiffs have failed to respond as required by summary judgment standards. Accordingly, judgment will be entered on Plaintiffs' state

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 10
Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

law claims for false arrest, malicious prosecution, and abuse of process.

### 6. *Municipal Liability*

Finally, I address the issue of the municipal defendants' liability. Plaintiffs defend a single claim against Manor Borough, involving the lack of an appropriate policy regarding the speed with which medical treatment must be obtained, including for pepper spray. I assume, therefore, given the breadth of Defendants' Motion in this regard, and Plaintiffs' lack of additional response thereto, that Plaintiffs do not intend to assert any additional claims against the Borough.[FN13] If a plaintiff fails to establish an underlying constitutional violation, then summary judgment is appropriate on a municipal liability claim made pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978). *Los Angeles v. Heller,* 475 U.S. 796, 799, 89 L.Ed.2d 806, 106 S.Ct. 1571 (1986). Because Defendants are entitled to summary judgment regarding the alleged delay in medical treatment for the pepper spray, there can be no *Monell* claim premised on that action.

> **FN13.** Plaintiffs also appear to raise the possibility of failure to train claims against the Township and Borough, but adduce absolutely no evidence in response to Defendants' Motions thereon.

With respect to Penn Township, Plaintiffs claim that the Township's policy, which Plaintiffs characterize as one of treating every vehicle stop as a stolen vehicle investigation, caused Defendant Steffey to conduct an impermissible search and use excessive force. Notably, Plaintiffs do not argue that this policy is unconstitutional in itself. Moreover, the sole evidence to which Plaintiffs cite in support of that proposition is the testimony of Defendant Steffey, suggesting that it is general policy to obtain a VIN when there is a falsified plate, or a plate removed from a vehicle, in order to "verify ownership and determine whether the vehicle was stolen."

"Where a city's official policy is constitutional, but the city causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered municipal policy, the city may be held liable for its employees' unconstitutional acts." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 125 (2d Cir.2004). In that case, the analysis focuses on whether the conduct in question may be said to represent the conscious choices of the municipality. *Id.* at 126. Under these circumstances, *Monell* requires that the particular policy be the "moving force" behind a constitutional violation. *Colburn v. Upper Darby Twp.,* 946 F.2d 1017 (3d Cir.1991). "But-for" causation is not enough to prove a causal connection under Monell. *Van Ort v. Estate of Stanewich,* 92 F.3d 831 (9th Cir.1996). Plaintiffs' mere statement that the policy could "arguably" permit the warrantless search here, "if there was probable cause to believe that the vehicle was stolen, which there was not in this case," is wholly insufficient to connect the conduct with the alleged policy.

**\*10** A policy requiring police to obtain a VIN number under circumstances such as those unarguably present here certainly caused Defendant Steffey to obtain the VIN, in a but-for sense; the policy, however, cannot be said to have proximately caused a warrantless search of Plaintiffs' garage or been the moving force behind the alleged injury. Indeed, Defendant Hanna had already been informed of the "dead" plate and arrived at the possibility that the vehicle or plate had been stolen; Defendant Steffey relied on various information from Defendant Hanna regarding the altercation and events preceding his arrival. It simply cannot be said that the Township caused Defendant Steffey to apply the subject policy in an unconstitutional manner.

### IV. *Remaining Claims*

The remainder of Plaintiffs' claims can be dealt with summarily. Moreover, Pennsylvania does not recognize a private cause of action for official oppression. *Demeter v. City of Bethlehem,* No. 03-6825, 2004 U.S. Dist. LEXIS 4386, at \*12 (Feb. 13, 2004 E.D. Pa.). Finally, Plaintiffs appear to have abandoned or otherwise do not intend to pursue their claims for defamation,[FN14] civil conspir-

Not Reported in F.Supp.2d                                                                    Page 11
Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

acy, procedural due process, and equal protection, as well as any claims based on the Fifth Amendment to the U.S. Constitution, and the Pennsylvania Constitution. They do not counter Defendants' arguments on these points, and I will not engage in *sua sponte* defense of the Amended Complaint.FN15 Accordingly, summary judgment will be entered on each of the foregoing causes of action. In contrast, I will not enter judgment on Plaintiffs' claim for punitive damages, as the propriety of such damages will be left to the jury.FN16

FN14. Plaintiffs mention that their defamation claim should proceed to trial, but proffer no defense of that claim.

FN15. Finally, Plaintiffs do not dispute that they cannot maintain claims against individual officers regarding activity in which those individuals were wholly uninvolved; they cannot, for example, proceed against Defendant Johnson for the conduct of other officers, that occurred in his absence. Similarly, Defendant Steffey did not effect the arrest of either Plaintiff, and cannot therefore be sued for such arrests. I need not separately address each of those matters at this time, as those are more easily dealt with at later stages of the litigation, such as instructions to the jury.

FN16. A reasonable jury believing Plaintiffs' version of the facts could find that certain of Defendants' conduct showed a reckless or callous indifference to federally protected rights. *Smith v. Wade,* 461 U.S. 30, 56, 75 L.Ed.2d 632, 103 S.Ct. 1625 (1983).

### *CONCLUSION*

In sum, Defendant have met their burden of demonstrating entitlement to summary judgment on all claims subject to their Motion, other than those against the individual officers based on free speech, the searches and seizures occurring in the garage, and the pepper spraying of husband-Plaintiff. In other words, remaining in this action are pertinent portions of Counts I and IA of the Complaint; Counts II through IX (misnumbered in the Amended Complaint) will not be permitted to proceed.

Several aspects of my Order today are based on deficiencies in the parties' pleadings or the record, rather than on a decisive evaluation of undisputed fact. I realize, therefore, that the parties may wish to raise additional issues with the Court. If so, they will be permitted to opportunity to file additional motions.

AND NOW, this **1st** day of November, 2006, it is ORDERED that Defendants' Motions for Summary Judgment (Docket Nos. 41 and 43) are GRANTED in part and DENIED in part. Summary judgment is DENIED as to Plaintiffs' claims against the individual Defendants based on freedom of speech or expression, excessive force against husband-Plaintiff, and unreasonable search and seizure, as stated in the foregoing Opinion. The Motions are GRANTED in all other respects, and judgment is entered accordingly.

**\*11** It is further Ordered that within seven (7) days from today's date, any party may seek leave to file an additional motion for summary judgment. When doing so, that party shall specifically identify the issue(s) on which the intended motion for summary judgment will be based. If leave is granted, the motions shall proceed on an accelerated schedule to be set by the Court.

W.D.Pa.,2006.
Frederick v. Hanna
Not Reported in F.Supp.2d, 2006 WL 3489745 (W.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.